UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN TABOR,

                           Plaintiff,

      - against -

NEW YORK CITY, et al.,

                        Defendants.
------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

11 CV 0195 (FB)

On January 13, 2011, plaintiff John Tabor commenced this action, pursuant to 42 U.S.C.

§ 1983, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution, naming as

defendants the City of New York, Detective James Ropenus, Detective McLaughlin, Police

Officer Singletary, District Attorney ("DA") Richard Brown, Assistant District Attorney

("ADA") Marjorie Fisher, ADA Keisha Espinal, ADA Lauren Parsons, ADA Kenneth

Applebaum, and Police Commissioner Raymond Kelly. Plaintiff alleges that his constitutional

rights were violated when defendants acted in accordance with the Queens District Attorney's

Office's policy and practice of refusing to investigate cases when an accused individual refuses

to sign a pre-arraignment waiver.

Currently pending before this Court is plaintiff's motion to amend his Complaint to name

two additional defendants from the Queens DA's Office – ADA Mike Schindhelm and Detective

Investigator Mary Picone. Defendants oppose the amendment on grounds of futility and cross-

move to dismiss the plaintiff's claims against D.A. Brown, ADAs Fisher, Espinal, Parsons,

Applebaum, and Police Commissioner Kelly. In a separate letter motion dated September 16,

2011, defendants move to bifurcate discovery on plaintiff's Monell claims against the City.

For the reasons set forth below, this Court: 1) denies plaintiff's motion to amend; 2) recommends that plaintiff's claims against DA Brown, and ADAs Fisher, Espinal, Parsons, and Applebaum be dismissed; and 3) grants defendants' motion to bifurcate <u>Monell</u> discovery until after the motion for summary judgment is decided; and 4) reserves decision on defendant's motion to bifurcate the trial.

## FACTUAL BACKGROUND

The Complaint alleges that from 1999 until November 14, 2005, plaintiff John Tabor resided with Rashida Hassan and her teenaged daughter, Aneesha Hassan, in a two-story home located at 188-25 Keeseville Avenue, St. Albans, New York. (Compl.[1] ¶¶ 14-15). Mr. Tabor's mother lived on the first floor of the house, while Mr. Tabor and the Hassans lived on the second floor. (<u>Id.</u> ¶¶ 17, 18). According to the Complaint, Aneesha was having problems in school and objected to Mr. Tabor's efforts to impose discipline and encourage her to focus on her school work. (<u>Id.</u> ¶¶ 28-38).

On November 14, 2005, Tabor was arrested in Connecticut; he subsequently pleaded guilty to burglary, and was incarcerated until May 2008. (<u>Id.</u> ¶¶ 41-42). Upon his release in May 2008, Tabor returned to live with Ms. Hassan at the Keeseville Avenue address. (<u>Id.</u> ¶ 44). On or about March 15, 2009, Ms. Hassan moved out of Tabor's apartment to an apartment in Ozone Park, Queens. (<u>Id.</u> ¶¶ 45-46).

---

[1]Citations to "Compl." refer to the proposed Amended Complaint, dated August 18, 2011 and filed on August 19, 2011.

2

On March 22, 2009, Aneesha lodged a complaint with the police, alleging that on November 15, 2005, Tabor raped her. (Id. ¶ 47). She claimed that the two of them were alone in the house at the time, and that she screamed during the entire incident. (Id. ¶¶ 49, 51, 52). Aneesha further claimed that she "was absolutely certain" that the rape occurred on the last day that Tabor was home prior to his arrest. (Id. ¶ 53).

The two detectives who interviewed Aneesha – Detective Ropenus and Officer Singletary – also interviewed Aneesha's mother, Ms. Hassan, who not only stated that she was home the last day before Tabor was arrested, but who also did not corroborate Aneesha's statement. Ms. Hassan neither stated that she heard Aneesha scream, nor that Aneesha appeared traumatized in any way that day. (Id. ¶¶ 61, 62).

On March 25 and 26, 2009, the detectives went to the Tabor residence to speak to Mr. Tabor, but nobody answered the door, despite plaintiff's claim that on both occasions, Tabor, his mother, his niece and her four small boys were at home. (Id. ¶¶ 63-67). On March 29, 2009, the detectives arrived at the home and asked Tabor to accompany them to the precinct. (Id. ¶ 68). When informed that he was being charged with raping Aneesha on November 15, 2005, Tabor claims that he told Detective Ropenus, "'That's impossible! I was in jail in Connecticut.'" (Id. ¶¶ 74, 78).

Plaintiff alleges that the officers' investigation was "incomplete and woefully inadequate." (Id. ¶ 82). They failed to obtain a search warrant for the premises to collect physical evidence, failed to perform a physical inspection of the house to determine that the house was small and sounds were audible throughout, failed to determine that Mrs. Tabor was

3

home that day and living on the first floor, and relied solely on the evidence presented by Aneesha, "whose statement was verifiably false and who had a motive to lie." (Id. ¶¶ 69, 70, 71, 80). The Complaint alleges that there were other steps that the officers could have taken but failed to take, including obtaining Tabor's criminal history, which would have shown that he was incarcerated on November 15, 2005. (Id. ¶¶ 91, 92).

With respect to the Queens DA's Office and the various ADAs named in the Complaint, plaintiff alleges that as a matter of practice and policy, the DA's Office conducts pre-arraignment interviews of defendants as part of the "Central Booking Interview Program." (Id. ¶ 97). Plaintiff alleges that the DA's Office refuses to conduct proper investigations where the defendant does not waive his Fifth Amendment right to remain silent and agree to this pre-arraignment interview. (Id. ¶ 98).

In Tabor's case, he alleges that at the time of his arrest, he was assigned a member of the Queens County 18b panel to represent him; this attorney was a former Queens County ADA. (Id. ¶¶ 103-04). Plaintiff declined to sign an arraignment waiver under New York Criminal Procedure Law § 180.80, which the DA's Office asks for "in order to gain more time to investigate their case." (Id. ¶ 108). Plaintiff claims that when defendants refuse to sign the arraignment waiver, the DA's Office has a practice and policy of failing to conduct proper investigations of defendants' cases. (Id. ¶ 109). Plaintiff claims that because he failed to sign the arraignment waiver, the ADAs and police failed to investigate the contradictions in Aneesha's statement, failed to interview witnesses, failed to obtain a search warrant, and failed to investigate where plaintiff was on the day of the alleged rape. (Id. ¶¶ 111, 112). Despite defense

4

counsel's representation that plaintiff was incarcerated on November 15, 2005, the DA's Office failed to obtain plaintiff's parole records or determine if he was in fact in jail at the time of the alleged rape. (Id. ¶¶ 114-129).

On April 3, 2009, the grand jury returned an indictment charging Tabor with rape on November 13, 2005. (Id. ¶¶ 139-40). The ADA informed defense counsel that the complaining witness had changed the date on which she alleged the rape occurred. (Id. ¶¶ 138, 139).

On March 26, 2010, a jury acquitted Tabor of all charges, and he was released after spending a year in Rikers Island. (Id. ¶¶ 154-56). Plaintiff brings claims of false arrest, malicious prosecution, violation of plaintiff's rights under the New York State Constitution, a Monell claim on the practice and policy of not investigating cases in the absence of an arraignment waiver, and loss of familial relationship.


## 1. Plaintiff's Motion to Amend

By Notice of Motion dated August 18, 2011, plaintiff moves to amend his Complaint, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, to add two new defendants: ADA Mike Schindhelm and Detective Investigator Mary Picone. Plaintiff alleges that these two individuals were responsible for conducting the unconstitutional pre-arraignment interview in which he alleges that he was told, "if there is something you would like us to investigate concerning this incident, you must tell us now so that we can look into it." (Pl.'s Mem.[2] at 1).

---

[2]Citations to "Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiff John Tabor's Motion to Amend the Complaint, dated August 18, 2011.

5

Plaintiff claims that because he exercised his Fifth Amendment right to remain silent, the DA's Office and the NYPD failed to investigate the circumstances surrounding the rape allegations. (Id.)

## A. Motion to Amend - Standards

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of right within 21 days after serving it, or, if the pleading is one to which a response is required, within 21 days after the filing of a responsive pleading, motion to dismiss, motion for a more definite statement, or motion to strike. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires," id., and courts have liberally construed this directive. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000), cert. denied, 531 U.S. 1035 (2000); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim").

Although the decision to grant a party's motion to file an amended pleading lies within the trial court's discretion, see Foman v. Davis, 371 U.S. at 182; see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); In re 'Agent Orange' Prods. Liab. Litig., 220 F.R.D. 22, 24 (E.D.N.Y. 2004), the court should consider a number of factors, "including undue delay, bad faith, undue prejudice to the opposing party, or futility" id. (citations omitted), or whether the

6

amendment is "'unlikely to be productive.'" Id. (quoting Ruffalo v. Oppenheimer & Co., 987

F.2d 129, 131 (2d Cir. 1993)); see also Foman v. Davis, 371 U.S. at 182; SCS Commc'ns, Inc. v.

Herrick Co., Inc., 360 F.3d 329, 345 (2d Cir. 2004); Fariello v. Campbell, 860 F. Supp. 54, 70

(E.D.N.Y. 1994) (opining that the "party opposing the motion for leave to amend has the burden

of establishing that an amendment would be prejudicial") (citation omitted).[3]  Where there has

been "inordinate delay" without a "satisfactory explanation" offered and prejudice to the non-

moving party is shown, the Court may deny the motion to amend. Scottish Air Int'l., Inc. v.

British Caledonian Group, PLC, 152 F.R.D. 18, 29 (S.D.N.Y. 1993) (citing Cresswell v. Sullivan

& Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)).


### B. Analysis

Plaintiff contends that his motion is timely and that there has been no undue delay

because he filed his motion to amend shortly after counsel was informed of the identity of the

two individuals who conducted the pre-arraignment interview.  (Pl.'s Mem. at 3).  Plaintiff

further argues that there has been no "bad faith" in that plaintiff has agreed to defendants'

counsel's requests for adjournment of the time to Answer and to delay depositions.  (Id.)  Finally,

plaintiff argues that there will be no prejudice as defendants have long been on notice of this

---

[3]To determine whether an amendment would cause undue prejudice, courts consider
whether the amendment "would: (i) require the opponent to expend significant additional
resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the
dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." In re
'Agent Orange' Prods. Liab. Litig., 220 F.R.D. at 25 (quoting Block v. First Blood Assocs., 988
F.2d 344, 350 (2d Cir. 1993)) (emphasis in original).  However, "[m]ere delay," without a
showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend.
Id.; see also United States v. Cont'l Ill. Nat'l. Bank & Trust Co., 889 F.2d 1248, 1254-55 (2d Cir.
1989).

issue since the original Complaint mentions the basis for this claim. (Id.)

Defendants appear to object to the proposed amendment only on grounds of futility.
Defendants contend that the claim against ADA Schindhelm is futile because he is entitled to
absolute immunity for his role in conducting the pre-arraignment interview. (Defs.' Mem.[4] at 3).
Defendants further claim that, contrary to plaintiff's allegations, Mary Picone is not an NYPD
officer, but rather is an employee of the DA's Office, and as such, she is entitled to the same
absolute immunity, making her addition to the Complaint futile as well. (Id. at 4).

## C. Prosecutorial Immunity

It is well-established that prosecutors are entitled to absolute immunity for conduct
"intimately associated with the judicial phase of the criminal process." Van de Kamp v.
Goldstein, 555 U.S. 335, 335 (2009) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). To
determine whether specific conduct is "intimately associated with the judicial phase of the
criminal process," id., courts apply a "functional approach" that looks to the function being
performed by the prosecutor. See Hill v. City of New York, 45 F.3d 653, 660 (2d Cir. 1995).
Thus, while the Second Circuit has declined to "establish a bright line commencement-of-
proceedings test," Barbera v. Smith, 836 F.2d 96, 100-101 (2d Cir. 1987), cert. denied, 489 U.S.
1065 (1989); Powers v. Coe, 728 F.2d 97, 104 (2d Cir. 1984), absolute immunity for
prosecutorial conduct is "broadly defined" and encompasses "'virtually all acts, regardless of

---

[4]Citations to "Defs.' Mem." refer to Defendants' Opposition to Plaintiff's Motion to File
An Amended Complaint and their Cross Motion to Dismiss Certain Individual Defendants, dated
September 2, 2011.

8

motivation, associated with [a prosecutor's] function as advocate.'" Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994).

The Supreme Court in Imbler emphasized that a prosecutor's conduct is subject to absolute immunity "both in deciding which suits to bring and in conducting them in court." 424 U.S. at 424. Thus, this immunity includes "not only their conduct of trials, but all of their activities that can be fairly characterized as closely associated with the conduct of litigation or potential litigation," including the choice not to initiate a prosecution. Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986). See also Trammell v. Coombe, No. 95 CV 1145, 1996 WL 601704 at *2-3 (S.D.N.Y. 1996).

In this regard, absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue. See Barbera v. Smith, 836 F.2d at 101 (citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 678 (9th Cir. 1984) (holding prosecutor absolutely immune from suit for destruction of exculpatory evidence where defendant arrested but not indicted). Thus, when the prosecutor has been presented with probable cause, the prosecutor's role is more likely to be advocatory rather than investigatory. See Consin v. Small, 325 F.3d 627, 633 (5th Cir. 2003) (citing Hill v. City of New York, 45 F.3d at 662-63)). Here, even before the ADAs conducted the pre-arraignment interview, the officers had probable cause to arrest plaintiff based on the statements of the complaining witness. See Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).

By contrast, where no proceedings have begun and the prosecutor is acting in an

9

investigative capacity, such as by providing the police with legal advice on investigative techniques, qualified immunity generally applies. See McCray v. City of New York, Nos. 03 CV 9685, 03 CV 9974, 03 CV 10080, 2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007); see also Barrett v. United States, 798 F.2d at 573 (finding only qualified immunity where defendant was only a prospective defendant).

At the same time, however, the Supreme Court has made it clear that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. . . .Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." Imbler v. Pachtman, 424 U.S. at 431, n.33.

In Barbera v. Smith, the Second Circuit divided the pre-litigation functions of a prosecutor into two categories: "(1) the supervision of and interaction with law enforcement agencies in acquiring evidence which might be used in a prosecution, and (2) the organization, evaluation, and marshaling of this evidence into a form that will enable the prosecutor to try a case or to seek a warrant, indictment, or order." 836 F.2d at 100 (citing Powers v. Coe, 728 F.2d at 103, 104). Where the prosecutor's conduct falls within that first category and consists mostly of actions that are of "a police nature," in that the prosecutor's actions seem primarily to involve directing the police investigation, the prosecutor is only entitled to qualified immunity to the extent that the conduct at issue "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

10

As the Court in Imbler explained, acts undertaken by a prosecutor in preparing to initiate a judicial proceeding are protected by absolute immunity, because to "expos[e] the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work. . .thus, we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process." 475 U.S. at 341-43. Thus, courts have held that prosecutors are entitled to absolute immunity when accused of a failure to investigate. See, e.g., Crews v. County of Nassau, No. 06 CV 2610, 2007 WL 4591325, at *51-52 (E.D.N.Y. Dec. 27, 2007) (prosecutor entitled to absolute immunity for failure to investigate alibis at defense counsel's request); Marczeski v. Hardy, 213 F. Supp. 2d 135, 141 (D. Conn. 2002) (noting that "this court has held that claims based on an alleged failure to investigate come within the absolute immunity afforded by Imbler"); Woolfolk v. Thomas, 725 F. Supp. 1281, 1283 (N.D.N.Y. 1989) (holding that the "decision to investigate is sufficiently closely related to the decision not to prosecute" so that absolute immunity applied).

Plaintiff argues that because the pre-arraignment interview conducted by ADA Schindhelm and Investigator Picone was pre-arraignment, pre-grand jury, pre-trial, and before charges had been brought, the timing of the interview makes it clear that it falls within the category of investigative work. (Pl.'s Reply[5] at 4). Moreover, plaintiff contends that the specific words used by these prospective defendants support his theory that the defendants were engaging

---

[5]Citations to "Pl.'s Reply" refer to the Reply Memorandum of Law in Further Support of Plaintiff John Tabor's Motion to Amend the Complaint, dated September 9, 2011.

11

in an investigative function. (Id.) ("If there is something you would like us to investigate concerning this incident, you must tell us now so we can look into it").

While the defendant had not been indicted at the time of the pre-arraignment interview, he had been arrested based on the statement of the complaining witness that she had been raped. The purpose of the pre-arraignment interview was for the prosecution to evaluate the evidence and decide whether to present the case to the Grand Jury. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (finding acts taken in evaluating evidence and preparing to seek indictment covered by absolute immunity).

While there is no dispute that the prosecutor used the words "investigate" and "look into," it is also undisputed that plaintiff did not provide the prosecutors with any information that he felt they should investigate. He exercised his right to remain silent. Unlike a Brady violation, where the prosecutor is in possession of exculpatory information that he is duty bound to disclose, see Brady v. Maryland, 373 U.S. 83 (1963), here the prosecutor is charged with failing to independently conduct an investigation for evidence or witnesses that might exonerate the defendant. See Armstead v. Town of Harrison, 579 F. Supp. 777, 780-71 (S.D.N.Y. 1984) (stating that although the plaintiff sought to impose a duty on the prosecutor to act as an advocate and investigate for the defendant, "these duties are grossly inconsistent with an adversary system of justice and there is no support for imposing them." United States v. Schneider, 395 F.3d 78, 89 (2d Cir. 2005); see also People v. Benard, 63 Misc. 2d 176, 184, 620 N.Y.S.2d 242 (holding that ADA's duty to seek out and disclose exculpatory material is not triggered unless the defendant specifically requests this information). In Trammel v. Coombe, the court held that the

12

decision not to investigate is so closely intertwined with the decision not to prosecute that to deny immunity for a failure to investigate would offer an obvious means to circumvent the doctrine of prosecutorial immunity. No. 95 CV 1145, 1996 WL 601704, at *3 (S.D.N.Y. Oct. 18, 1996) (concluding that the prosecutors were entitled to absolute immunity for failing to investigate plaintiff's claimed violations).

Having considered the arguments of both sides, the Court finds that an amendment to add ADA Schindhelm as a defendant would be futile because his conduct at the pre-arraignment interview, regardless of the words used, was not the type of "investigative function" that normally falls outside the category of conduct subject to absolute immunity. Rather, he was acting in connection with his function as a prosecutor, evaluating the evidence in order to determine whether to present the case to the grand jury; thus, he receives absolute immunity. To hold otherwise would not only penalize prosecutors and put them at risk for offering defendants an opportunity to speak to them before presenting cases to the grand jury, but it would impose upon them an obligation to investigate that goes beyond clearly established principles of constitutional law.

Similarly, with respect to defendant Picone, as a non-lawyer employee of the DA's Office, she is "entitled to the same degree of immunity as the [district attorney] himself for [her] activities while assisting the investigation and prosecution" of the case. Hill v. City of New York, 45 F.3d at 660; Davis v. Grusemeyer, 996 F.2d 617, 632 (2d Cir. 1993) (holding that investigators performing work in connection with a criminal prosecution are entitled to the same absolute immunity as to the prosecutor); see also Goncalves v. Reynolds, 198 F. Supp. 2d 278

13

(W.D.N.Y. 2001) (finding investigator for sheriff's department who was working at the direction of the DA's Office entitled to absolute immunity).

Accordingly, because the Court finds that the amendment would be futile, the Court denies plaintiff's motion to amend to add ADA Schindhelm and Investigator Picone as defendants.

## II. Defendants' Motion to Dismiss

Defendants cross-move to dismiss the district attorney defendants to the extent that they are sued in their official capacities, arguing that the basis for a suit for money damages against a District Attorney or an assistant district attorney is actually a suit against the State of New York and barred by the Eleventh Amendment. (See Defs.' Mem. at 5 (citing Ying Jin Gan v. City of N.Y., 996 F.2d 522, 536 (2d Cir. 1993); Rodrigues v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997)). Defendants also contend that like ADA Schindhelm, the DA, and other ADAs are entitled to absolute immunity for the reasons discussed above. (See Defs.' Mem. at 6 (citing Buckley v. Fitzsimmons, 509 U.S. at 273; and Imbler v. Pachtman, 424 U.S. at 431)).

Defendants also seek to dismiss the claims asserted against Police Commissioner Kelly for his lack of any personal involvement in the alleged deprivation of constitutional rights. (See Defs.' Mem. at 7 (quoting Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (holding that the "personal involvement of defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"))). Since plaintiff has voluntarily agreed to withdraw his claims against Commissioner Kelly, there is no need to address this argument.

14

## A. Standards on Motion to Dismiss

It is well-established that courts evaluate a motion for judgment on the pleadings,

pursuant to Rule 12(c), under the same standard as a motion to dismiss under Federal Rule of

Procedure 12(b)(6).[6] See, e.g., Hayden v. Paterson, 594 F.3d 150, 157, n.4 (2d Cir. 2010). When

deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6), the Second Circuit has stated that a court must "accept as true the

factual allegations of the complaint, and draw all inferences in favor of the pleader." Mills v.

Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); see also Gorman v. Consol. Edison

Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). In addition, the court must give plaintiff's claims "a

liberal construction." Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y.

---

[6]As an initial matter, plaintiff argues that defendants' motion fails to state under which provision of the Federal Rules of Civil Procedure they are moving. Plaintiff argues that if defendants are moving pursuant to Fed. R. Civ. P. 12(c), as they indicated at the conference before this Court, then a motion seeking to dismiss only specific defendants is improper because a Rule 12(c) motion is designed to implicate the pleadings in their entirety. (Pl.'s Mem. at 1 (citing Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007)). Although plaintiff is correct that a Rule 12(c) motion "implicates the pleadings as a whole," see Koninklijke Philips Electronics N.V. v. The ADS Group, 694 F. Supp. 2d 246, 251, n.7 (S.D.N.Y. 2010), he misinterprets what this means and how it applies here. Since motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) must be filed by defendants before they submit their Answer, see Fed. R. Civ. P. 12(b), courts evaluating Rule 12(b)(6) motions only review the Complaint and its attachments. In contrast, a motion for judgment on the pleadings pursuant to Rule 12(c) may be filed "at any time '[a]fter the pleadings are closed,' as long as the motion does not delay the trial." Koninklijke Philips Electronics N.V. v. The ADS Group, 694 F. Supp. 2d at 251, n.7 (quoting Fed. R. Civ. P. 12(c)). Accordingly, courts evaluating Rule 12(c) motions may consider all of the documents and exhibits filed in the case to that point, including the Answer and any attached exhibits. See id. (noting that "[a] Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole as opposed to simply the complaint and its attachments") (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, §§ 1367, 1368 (2d ed. 1995)). Consequently, the fact that defendants' motion for judgment on the pleadings "implicates the pleadings as a whole" means that this Court may review all of the parties' submissions in rendering a judgment; it does not mean that defendants are limited under Fed. R. Civ. P. 12(c) to moving to dismiss all defendants or none of them.

15

1986) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)), <u>aff'd in part and vacated in part on other grounds</u>, 823 F.2d 31 (2d Cir. 1987). However, the court is not required to accept the truth of legal conclusions couched as factual allegations. <u>See</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In <u>Bell Atlantic Corporation v. Twombly</u> and <u>Ashcroft v. Iqbal</u>, the Supreme Court clarified the pleading standards under which courts are to evaluate a motion to dismiss, "arguably shift[ing] pleading standards from 'simple notice pleading' to a 'more heightened form of pleading.'" <u>Barbosa v. Continuum Health Partners, Inc.</u>, 716 F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937 (2009)).

Now, when deciding a Rule 12(b)(6) motion to dismiss, the court should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. at 1940 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. at 1949; <u>see also</u> <u>Hayden v. Paterson</u>, 594 F.3d 150, 160-61 (2d Cir. 2010). Under this heightened pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. at 1950; <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 545. Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555. However, while the plausibility standard

16

does not rise to the level of a probability requirement, the plausibility standard nevertheless demands that a plaintiff demonstrate "'more than a sheer possibility that a defendant has acted unlawfully.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d at 215 (quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996). Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct," and plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied. Ashcroft v. Iqbal, 129 S. Ct. at 1950.

## B. Analysis

In opposing defendants' motion, plaintiff argues that defendants have attempted to expand the categories of conduct for which absolute immunity applies to encompass all acts undertaken by the individual prosecutors. (Pl.'s Mem. in Opp.[7] at 2-3). As with ADA Schindhelm, plaintiff argues that the unconstitutional pre-arraignment interview, arraignment waiver, and "bad faith failure by Defendants to carry out any form of investigation into Mr. Tabor's case" is conduct of an investigator, not a prosecutor, and therefore, any individual associated with these events is not subject to absolute immunity. (Id. at 3).

---

[7]Citations to "Pl.'s Mem. in Opp." refers to Plaintiffs John Tabor's Opposition to Defendants' Cross-Motion to Dismiss Certain Individual Defendants, dated September 23, 2011.

However, as discussed above in analyzing plaintiff's proposed claims against ADA Schindhelm, the Court finds that the conduct engaged in by the prosecutors during the pre-arraignment interview was not investigatory in nature, but rather constituted part of the process by which the prosecutor made a determination whether to proceed to the grand jury with the charges. Similarly, any alleged failure of the prosecutors to investigate Tabor's case beyond what actions they did take is not a duty imposed on prosecutors under the law as it currently exists.

Beyond these allegations, plaintiff's Complaint fails to allege what specific violative conduct was engaged in by ADAs Fisher, Applebaum, Espinal, and Parsons. It does not appear that they were even present during the pre-arraignment interview. Thus, based on the facts as currently alleged in the Complaint, it appears that they would be protected by absolute immunity. Absolute immunity has been found to apply even where the prosecutor knowingly prosecutes an innocent person, see Shmueli v. City of New York, 424 F.3d 231, 236-39 (2d Cir. 2005); where there is an absence of probable cause, Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004); where the prosecutor relies on false evidence to bring the case, Dory v. Ryan, 25 F.3d at 83; or where the prosecutor withheld exculpatory evidence. See Van de Kamp v. Goldstein, 555 U.S. 335 (2009).

Given that the Court has rejected plaintiff's argument with respect to ADA Schindhelm, and that no basis for distinguishing the conduct of the other ADAs has been presented, the Court

18

respectfully recommends that the claims against these defendants be dismissed.[8]  Plaintiff does

not address the defendants' Eleventh Amendment argument, but it seems clear that this provides

an alternate ground for dismissal of the claims against the DA defendants.  See, e.g., Rodriguez

v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997).


### III.  Motion to Bifurcate Monell Claim

By letter motion dated August 25, 2011, defendants seek an order bifurcating plaintiff's

claims against the individually named defendants from the claims brought against the City, and

staying all Monell discovery until liability against the individual defendants has been established.

(Defs.' 8/25/11 Ltr.[9] at 1).  In connection with this request, defendants seek to stay the plaintiff's

Notice of Deposition for a Rule 30(b)(6) witness, as well as the depositions of ADAs Fisher and

Applebaum regarding interviews of detainees prior to arraignment.  (Id.)

Defendants contend that bifurcation will further "the goals of convenience and efficiency"

while also conserving the time and resources of the parties and the court.  (Id. at 2).

---

[8]The Court notes that in his opposition papers, plaintiff mentions the actions of ADAs
Fisher and Applebaum in connection with the request that Mr. Tabor sign the standard
arraignment waiver, but there is no argument presented as to ADAs Espinal or Parsons.  Claims
brought under Section 1983 require "a plaintiff to establish that a defendant had some personal
involvement in the allegedly unlawful conduct."  Turner v. Silver, No. 96 CV 2315, WL 658616,
at *3 (2d Cir. Nov. 12, 1996).  Other than a general allegation that all of the ADAs "failed to
examine a patently false allegation" (Compl. ¶ 111), the involvement of ADAs Espinal and
Parsons is unclear.  All that seems to be specifically alleged in the Complaint with respect to Mr.
Espinal is that he allegedly informed counsel of the change in the date of the alleged rape.
(Compl. ¶ 136).  ADA Parsons is alleged to have met with plaintiff and counsel to discuss the
date change and offer a plea, and elicited testimony in the Grand Jury.  (Id. ¶¶ 138, 139, 144).
Other than these actions, it is unclear what conduct, investigatory or otherwise, is alleged to have
been undertaken by these ADAs in violation of plaintiff's constitutional rights.

[9]Citations to "Defs.' 8/25/11 Ltr." refer to defendants' letter to the undersigned, dated
August 25, 2011 and filed that same day.

19

## A. Standards

In order to hold a municipality liable under Section 1983, a plaintiff must first establish that the individual defendants' actions amounted to a constitutional violation, and secondly, must show that a policy or custom of the municipality caused their violative conduct. City of Canton v. Harris, 489 U.S. 378 (1989); Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985). If the plaintiff cannot show that the individual defendant's conduct was a constitutional violation, then the Monell claim must be dismissed.

Bifurcation is appropriate when the resolution of a single issue may resolve the case and render trial on the other issue unnecessary. See Ismail v. Cohen, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990); see also Vickare v. AMBAC, Inc., 106 F.3d 457, 466 (2d Cir. 1996); Ricciuti v. N.Y. City Transit Auth., 796 F. Supp. 84, 86 (S.D.N.Y. 1992). In this Circuit, courts often order bifurcation in 1983 civil rights cases where there are Monell claims against the municipality. See, e.g., Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999); Jones v. City of New York, No. 10 CV 5387, 2011 U.S. Dist LEXIS 31561, at *2-3 (E.D.N.Y. Mar. 27, 2011); Williams v. City of New York, No. 07 CV 5362, 2008 U.S. Dist LEXIS 104730, at *8 (E.D.N.Y. Dec. 29, 2008) (noting that bifurcation is a "common practice" in this Circuit in civil rights cases); Busch v. City of New York, No. 00 CV 5211, 2002 U.S. Dist LEXIS 18337, at *9-10 (E.D.N.Y. Sept. 9, 2002); Duke v. County of Nassau, No. 97 CV 1495, 2000 U.S. Dist LEXIS 22415, at *2-3 (E.D.N.Y. Oct. 26, 2000). In Morales v. Irizarry, the court stated, "[t]he overwhelming authority holds that . . . the most prudent course is to try the Monell claims separately and to stay discovery concerning those claims." 95 CV 5068,

1996 US Dist. LEXIS 15613, at *3 (S.D.N.Y. Oct. 22, 1996).

Here, defendants contend that issues of efficiency and convenience weigh in favor of bifurcation because the task of litigating the Monell claim will be burdensome and time consuming. (Defs.' 8/25/11 Ltr. at 3). Defendants contend that among the discovery sought by plaintiff is testimony from numerous individuals regarding the Queens DA's Office policies and practices. (Id.) Defendants contend that resolution of the plaintiff's claim that the individual defendants violated his rights will allow the court to expedite trial of those issues and conserve resources. Defendants intend to move for summary judgment on the issue of probable cause for the arrest, and if they succeed, discovery on the Monell claim will be unnecessary. (Id. at 4).

In opposing bifurcation, plaintiff argues that the defendants' fear of extensive Monell discovery is unfounded. (Pl.'s 9/9/11 Ltr.[10] at 1). Plaintiff insists that he only seeks to depose the one 30(b)(6) witness that the City identifies in response to his Notice of Deposition. (Id.) In response to defendants' argument that the discovery needed for the Monell claim is different from the evidence required to prove the claims against the individual defendants, plaintiff argues that they are intrinsically intertwined and the claims against the individual defendants would require proof of the same evidence. (Id. at 1-2).

In this case, the Court agrees that bifurcation, at least for discovery purposes, is appropriate. If the district court adopts this Court's recommendation to dismiss the claims against the DA and the ADAs on immunity grounds, the challenge to the pre-arraignment process

---

[10]Citations to "Pl.'s 9/9/11 Ltr." refer to the September 9, 2011 letter submitted by plaintiff in opposition to defendants' letter motion of August 25, 2011.

and arraignment waiver fails. Even if the Court were to permit these claims to proceed,
defendants correctly note that if they can establish that the defendant officers had probable cause
to arrest plaintiff based on Aneesha's statement, plaintiff's claims against the individual
defendants would fail because a finding of probable cause defeats both claims for false arrest and
malicious prosecution. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). See
also Obilo v. City Univ. of New York, No. 01 CV 5118, 2003 U.S. Dist. LEXIS 2886, at *34
(E.D.N.Y. Feb. 28, 2003) (holding that "probable cause to arrest is sufficient for probable cause
to prosecute unless facts come to light between the arrest and arraignment that vitiate the
probable cause"). Here, although plaintiff contends that the ADAs failed to investigate the basis
for his arrest, in particular, his incarceration at the time, this is of no consequence to the question
of the propriety of the pre-arraignment interview; even if the prosecutors had a duty to
investigate,[11] plaintiff declined to provide them with any information from which to commence
an investigation. Thus, at this time, there is no discernable causal connection between the pre-
arraignment interview and any injury suffered by plaintiff.

Accordingly, having considered all of the circumstances here, the Court grants
defendants' request to bifurcate discovery on the Monell claim. If defendants are not successful
in moving for summary judgment, then the 30(b)(6) deposition sought by plaintiff's counsel can
be completed expeditiously and the case moved quickly to trial. This Court reserves decision on
the motion to bifurcate the trial, finding that it would be better to consider this issue after

---

[11] As noted supra at 12-13, this Court finds no basis for holding the prosecutors to such a
duty in this case.

22

summary judgment motions are decided and the scope of the trial is clarified.

## CONCLUSION

Accordingly, for the reasons stated herein, the Court 1) denies plaintiff's motion to amend

to add ADA Schindhelm and Investigator Mary Picone as defendants; 2) respectfully

recommends that the court grant defendants' motion to dismiss plaintiff's claims against DA

Brown, Commissioner Kelly, and the ADA defendants; 3) grants defendants' motion to bifurcate

Monell discovery until after the motion for summary judgment is decided; and 4) reserves

decision on defendant's motion to bifurcate the trial.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure

to file objections within the specified time waives the right to appeal the District Court's order.

See 28 U.S.C. Section 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health &

Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either

electronically through the ECF system or by mail.


**SO ORDERED.**

Dated: Brooklyn, New York
        February 23, 2012

/s/  CHERYL

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York