11-CV-195 (FB)(CLP)

UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN TABOR,

Plaintiff,

-against-

NEW YORK CITY, DETECTIVE JAMES ROPENUS,
DETECTIVE MCLAUGHLIN, POLICE OFFICER
SINGLETARY, ASSISTANT DISTRICT ATTORNEY
KEISHA ESPINAL, ASSISTANT DISTRICT
ATTORNEY LAUREN PARSONS, ASSISTANT
DISTRICT ATTORNEY KENNETH APPLEBAUM,
ASSISTANT DISTRICT ATTORNEY MARJORIE
FISHER, DISTRICT ATTORNEY RICHARD BROWN,
AND POLICE COMMISSIONER RAYMOND KELLY,
IN THEIR INDIVIDUAL AND PROFESSIONAL
CAPACITIES,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Detectives Ropenus, McLauhglin and*
*Singletary*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Matthew Modafferi*
*Tel: (212) 788-1652*
*NYCLIS #: 2011-001813*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

STANDARD FOR SUMMARY JUDGMENT .............................................................. 2

ARGUMENT

    POINT I

        PLAINTIFF'S FALSE ARREST CLAIM FAILS
        AS PROBABLE CAUSE EXISTED FOR HIS
        ARREST ....................................................................................4

    POINT II

        PLAINTIFF FAILS TO ESTABLISH A CLAIM
        FOR MALICIOUS PROSECUTION .......................................10

        A.   The Individually Named Defendants Did
             Not Commence Plaintiff's Prosecution ...................................11

        B.   Probable Cause Existed For Plaintiff's
             Criminal Prosecution ..............................................................12

        C.   Defendants Did Not Act With Malice .......................................13

    POINT III

        DEFENDANTS ROPENUS, MCLAUGHLIN
        AND SINGLETARY ARE ENTITLED TO
        QUALIFIED IMMUNITY .......................................................14

    POINT IV

        PLAINTIFF'S CLAIM AGAINST THE CITY OF
        NEW YORK FAILS AS PLAINTIFF CANNOT
        ESTABLISH AN UNDERLYING
        CONSTITUTIONAL VIOLATION.......................................16

**Page**

POINT V

        PLAINTIFF'S CONSTITUTIONAL TORT AND
        LOSS OF FAMILIAL RELATIONSHIP CLAIMS
        FAIL AS A MATTER OF LAW ............................................................16

CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                          <u>**Pages**</u>

Albright v. Oliver,
   510 U.S. 266 (1994) ...................................................................................... 11, 18

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1996) ........................................................................................... 3

Baker v. McCollan,
   443 U.S. 137 (1979) ........................................................................................... 8

Batson-Kirk v. City of New York,
   07-CV-1950 (KAM)(JMA),
   2009 U.S. Dist. LEXIS 44841 (E.D.N.Y. May 28, 2009) ...................................... 12

Bernard v. U.S.,
   25 F.3d 98 (2d Cir. 1994) ................................................................................. 4, 5

Brodie v. Fuhrman,
   07-CV-4212,
   2010 U.S. Dist. LEXIS 30158 (E.D.N.Y. Mar. 29, 2010) .................................... 8-9

Brown v. Metropolitan Trans. Auth.,
   717 F. Supp. 257 (S.D.N.Y. 1989) ...................................................................... 17

Campbell v. Giuliani,
   99 Civ. 2603 (JG),
   2001 U.S. Dist. LEXIS 609 (S.D.N.Y. Jan. 24, 2001) ............................................ 5

Celestin v. City of New York,
   581 F. Supp. 2d 420 (E.D.N.Y. 2008) .................................................................. 9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ........................................................................................... 3

City of Los Angeles v. Heller,
   475 U.S. 796 (1986) ......................................................................................... 16

Coyle v. Coyle,
   153 Fed. Appx. 10 (2d Cir. 2005) ........................................................................ 5

Curley v. Village of Suffern,
   268 F.3d 65 (2d Cir. 2001) .............................................................................. 5, 8

**Cases**                                                                                                 **Pages**

Daniels v. City of New York,
    03 Civ. 809 (GEL),
    2003 U.S. Dist. LEXIS 19765 (S.D.N.Y. Nov. 5, 2003) .............................................. 7

Davidson v. Bronx Mun. Hosp.,
    64 N.Y.2d 59, 484 N.Y.S.2d 533 (1984) ................................................................ 17

Donovan v. Briggs,
    250 F. Supp. 2d 242 (W.D.N.Y. 2003) ................................................................ 15

Eastman Kodak Co. v. Image Technical Servs., Inc.,
    504 U.S. 451 (1992) ........................................................................................ 3

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004) .............................................................................. 14

Felder v. Casey,
    487 U.S. 131 (1988) ........................................................................................ 17

Gallo v. Prudential Residential Servs., Ltd. Partnership,
    22 F.3d 1219 (2d Cir. 1994) .............................................................................. 3

Gaston v. City of New York,
    11 Civ. 4750 (AJP),
    2012 U.S. Dist. LEXIS 46243 (S.D.N.Y. Apr. 2, 2012) ............................................ 7

Graham v. Connor,
    490 U.S. 386 (1989) ........................................................................................ 18

Granito v. Tiska,
    120 Fed. Appx. 847 (2d Cir. 2005) ...................................................................... 15

Harlow v. Fitzgerald,
    457 U.S. 800 (1992) ........................................................................................ 14

Hyde v. Caputo,
    98-CV- 6772 (FB) (ASC),
    2001 U.S. Dist. LEXIS 6253 (May 11, 2001) ........................................................ 17

Illinois v. Gates,
    462 U.S. 213 (1983) ........................................................................................ 4

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006) .............................................................................. 4

iv

**Cases**                                                                                          **Pages**


Jean v. City of New York,
   09 CV 801 (RJD),
   2011 U.S. Dist. LEXIS 110954 (E.D.N.Y. Sept. 28, 2011)...................................................... 5, 7


Jocks v. Tavernier,
   316 F.3d 128 (2d Cir. 2003)....................................................................................... 4, 11


Lowth v. Town of Cheektowaga,
   82 F.3d 563 (2d Cir. 1996)............................................................................................. 14


Lyles v. State of New York,
   2 A.D.3d 694 (N.Y. App. Div. 2d Dep't 2003) .................................................................. 18


Malley v. Briggs,
   475 U.S. 335 (1986)....................................................................................................... 14


Martinez v. City of New York,
   No. 06 Civ. 5671 (WHP),
   2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. June 27, 2008),
   aff'd Martinez v. Muentes,
   340 Fed. Appx. 700 (2d Cir. July 27, 2009) ..................................................................... 16


Maryland v. Pringle,
   540 U.S. 366 (2003)......................................................................................................... 4


Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)......................................................................................................... 3


McClellan v. Smith,
   439 F.3d 137 (2d Cir. 2006).......................................................................................... 15


Michigan v. DeFillippo,
   443 U.S. 31 (1979)........................................................................................................... 5


Miloslavsky v. AES Eng'g Soc'y, Inc.,
   808 F. Supp. 351 (S.D.N.Y. 1992),
   aff'd, 993 F.2d 1534 (2d Cir. 1993),
   cert. denied, 510 U.S. 817 (1993) ................................................................................... 5


Mitchell v. Forsyth,
   472 U.S. 511 (1985)....................................................................................................... 14

**Cases**                                                                                              **Pages**

Nardelli v. Stamberg,
  44 N.Y.2d 500 (1978) ................................................................................. 14

Obilo v. City University of the City of New York,
  2003 U.S. Dist. LEXIS 2886 (E.D.N.Y. Feb. 28, 2003)........................... 12

Panetta v. Crowley,
  460 F.3d 388 (2d Cir. 2006)............................................................... 4, 8

Parise v. New York City Dep't of Sanitation,
  306 F. App'x 695 (2d Cir. 2009) ........................................................ 17

Parisi v. Suffolk Cnty.,
  No. 04-CV-2187,
  2009 U.S. Dist. LEXIS 112388 (E.D.N.Y. Nov. 30, 2009).................... 7, 15

Pierson v. Ray,
  386 U.S. 547 (1967)........................................................................... 5

Rehberg v. Paulk,
  132 S. Ct. 1497 (2012)................................................................... 11, 13

Riccio v. State of New York,
  08-CV-1588,
  2012 U.S. Dist. LEXIS 70024 (E.D.N.Y. May 10, 2012) ...................... 7-8

Ricciuti v. New York City Transit Authority,
  124 F.3d 123 (2d Cir. 1997) ............................................................... 5

Robison v. Via,
  821 F.2d 913 (2d Cir. 1987)................................................................ 15

Rohman v. New York City Transit Auth.,
  215 F.3d 208 (2d Cir. 2000)................................................................ 11

Rothstein v. Carriere,
  373 F.3d 275 (2d Cir. 2004)........................................................... 11, 13

Savino v. City of New York,
  331 F.3d 63 (2d Cir. 2003)................................................................. 13

Scotto v. Almenas,
  143 F.3d 105 (2d Cir. 1998)................................................................. 3

**Cases**                                                  **Pages**

Silberstein v. County of Westchester,
  92 A.D. 867 (2d Dept 1983),
  aff'd, 62 N.Y.2d 675 (1984) ................................................................ 17

Singer v. Fulton County Sheriff,
  63 F.3d 110 (2d Cir. 1995)................................................................... 5

Smith v. City of New York,
  388 F. Supp. 2d 179 (S.D.N.Y. 2005)................................................. 7

Sulkowska v. City of New York,
  129 F. Supp. 2d 274 (S.D.N.Y. 2001)................................................ 14

Tenenbaum v. Williams,
  193 F.3d 581 (2d Cir. 1999).............................................................. 18

Vassallo v. Lando,
  591 F. Supp. 2d 172 (E.D.N.Y. 2008) .............................................. 16

Warner v. Village of Goshen Police Dep't.,
  256 F. Supp. 2d 171 (S.D.N.Y. 2003)............................................... 17

Weyant v. Okst,
  101 F.3d 845 (2d. Cir. 1996)........................................................... 4, 5

White v. Frank,
  855 F.2d 956 (2d Cir. 1988).............................................................. 11

Wyler v. United States,
  725 F.2d 156 (2d Cir. 1983).............................................................. 3

Ying Jing Gan v. City of New York,
  996 F.2d 522 (2d Cir. 1993).............................................................. 3

**Statutes**                                                                 **Cases**

Fed. R. Civ. P. 56..............................................................................................2

N.Y. Gen. Mun. Law § 50-e ............................................................................ 17

N.Y. Gen. Mun. Law § 50-i ............................................................................. 17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

JOHN TABOR,

                                         Plaintiff,

                   -against-

NEW YORK CITY, DETECTIVE JAMES ROPENUS,
DETECTIVE MCLAUGHLIN, POLICE OFFICER
SINGLETARY, ASSISTANT DISTRICT ATTORNEY
KEISHA ESPINAL, ASSISTANT DISTRICT
ATTORNEY LAUREN PARSONS, ASSISTANT
DISTRICT ATTORNEY KENNETH APPLEBAUM,
ASSISTANT DISTRICT ATTORNEY MARJORIE
FISHER, DISTRICT ATTORNEY RICHARD BROWN,
AND POLICE COMMISSIONER RAYMOND KELLY,
IN THEIR INDIVIDUAL AND PROFESSIONAL
CAPACITIES,

                                    Defendants.

------------------------------------------------------------------------- x

**DEFENDANTS CITY OF
NEW YORK, AND
DETECTIVES ROPENUS,
MCLAUGHLIN AND
SINGLETARY'S
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT**

11-CV-195 (FB)(CLP)

## PRELIMINARY STATEMENT

         Plaintiff John Tabor commenced this action on January 13, 2011 pursuant to 42

U.S.C. § 1983, alleging that defendants City of New York, Commissioner Kelly, Detectives

Ropenus and McLaughlin, Officer Singletary, District Attorney Brown and Assistant District

Attorneys Espinal, Parson, Applebaum and Fisher violated his civil rights. Specifically, plaintiff

set forth claims for false arrest, malicious prosecution, constitutional tort, municipal liability and

loss of familial relationship. On August 19, 2011, plaintiff moved to file an amended complaint

seeking to add two additional individual defendants from the Queens County District Attorney's

Office. On September 2, 2011, defendants opposed plaintiff's motion to amend the complaint

and cross-moved to dismiss the complaint as against defendants Commissioner Kelly, District

Attorney Brown and Assistant District Attorneys Espinal, Parson, Applebaum and Fisher. On

February 23, 2012, Magistrate Judge Pollak issued a Report and Recommendation recommending the denial of plaintiff's motion to amend the complaint and dismissal of plaintiff's claims against defendants DA Brown, Commissioner Kelly, and ADAs Espinal, Parson, Applebaum and Fisher. Magistrate Judge Pollak also granted the City's request to bifurcate <u>Monell</u> discovery, noting that if the defendant officers establish probable cause for plaintiff's arrest, discovery on the <u>Monell</u> claim will be unnecessary. On March 13, 2012, the Honorable Frederic Block adopted the Report and Recommendation in its entirety. Plaintiff's remaining claims against defendants City of New York, and Detectives Ropenus, McLaughlin and Singletary are ripe for summary judgment.

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that: (1) plaintiff's false arrest claim fails as probable cause existed for his arrest; (2) plaintiff fails establish a claim for malicious prosecution; (3) defendants Ropenus, McLaughlin and Singletary are entitled to qualified immunity; (4) plaintiff's claim against the City of New York fails as plaintiff cannot establish an underlying constitutional violation; and (5) plaintiff's constitutional tort and loss of familial relationship claims fail as a matter of law.

**STATEMENT OF FACTS**

For a complete statement of facts, the Court is respectfully referred to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, dated August 20, 2012, ("Defendants' 56.1 St."), submitted herewith.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is warranted when, viewing the evidence in a light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact

and the movant is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56; Eastman

Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 457 (1992).

        A motion for summary judgment requires the party with the burden of proof at

trial to come forward with proper evidence and "make a showing sufficient to establish the

existence of [each] element to that party's case . . . since a complete failure of proof concerning

an essential element of . . . [the] case necessarily renders all other facts immaterial."  Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'"

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Second

Circuit stated:

> [T]he moving party may obtain summary judgment by showing
> that little or no evidence may be found in support of the
> nonmoving party's case.  When no rational jury could find in favor
> of the nonmoving party because the evidence to support its case is
> so slight, there is no genuine issue of material fact and a grant of
> summary judgment is proper.

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994)

(citations omitted).  The non-moving party must produce evidence in the record and "may not

rely simply on conclusory statements or on contentions that the affidavits supporting the motion

are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see

Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (citations omitted); Wyler v. United

States, 725 F.2d 156, 160 (2d Cir. 1983).  "The mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of *material* fact."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1996) (emphasis added).

For the reasons set forth herein, summary judgment should be granted in favor of defendants.

## ARGUMENT

### POINT I

### PLAINTIFF'S FALSE ARREST CLAIM FAILS AS PROBABLE CAUSE EXISTED FOR HIS ARREST

In his complaint, plaintiff sets forth a claim for false arrest.[1]  In order to state a claim for false arrest or false imprisonment, a plaintiff must prove all of the following four elements: (1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Weyant v. Okst, 101 F.3d 845, 852 (2d. Cir. 1996); Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994).

The presence of probable cause is an absolute defense to a false arrest claim. Jaegly v. Couch, 493 F.3d 149, 152 (2d Cir. 2006); Weyant, 101 F.3d at 852.  "Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).  The existence of probable cause must be determined on the basis of the totality of the circumstances. Maryland v. Pringle, 540 U.S. 366, 371 (2003); Illinois v. Gates, 462 U.S. 213, 230-32 (1983).  Probable cause may exist even where the officer has mistaken information, so

---

[1] A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.  Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).

long as it was reasonable for him to rely on that information at the time of the arrest. Coyle v.

Coyle, 153 Fed. Appx. 10, 12 (2d Cir. 2005); Bernard, 25 F.3d at 102.

Probable cause requires only a probability, not an actual showing, of criminal

activity, Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); Miloslavsky

v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir.

1993), cert. denied, 510 U.S. 817 (1993), and the validity of an arrest does not depend upon an

ultimate finding of guilt or innocence.  Pierson v. Ray, 386 U.S. 547, 555 (1967); Weyant, 101

F.3d at 852.   Thus, whether the suspect was later acquitted of the charges for which he was

arrested is irrelevant to a determination of probable cause at the time of arrest.  Michigan v.

DeFillippo, 443 U.S. 31, 36 (1979).

"When information is received from a putative victim, probable cause exists

unless the circumstances raise doubt as to the person's veracity." Curely v. Vill. of Suffern, 268

F.3d 65, 70 (2d Cir. 2001); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).

"Indeed, as sources of information go, crime victims are among the most reliable; they usually

can provide a first-hand non-hearsay account of the criminal activity." Campbell v. Giuliani, 99

Civ. 2603 (JG), 2001 U.S. Dist. LEXIS 609, at *9 (S.D.N.Y. Jan. 24, 2001) (citing Miloslavsky,

808 F. Supp. at 355 ("The veracity of citizen complaints who are the victims of the very crime

they report to the police is assumed"), aff'd, 993 F.2d 1534 (2d Cir. 1993), cert. denied, 510 U.S.

817 (1993)).  "A variety of circumstances might corroborate a putative victim's veracity … such

as… (1) the officer's observation of the victim's physical injuries, (2) the level of detail and

consistency in the victim's description of events, or (3) the victim's identification of the plaintiff

by name and physical description." Jean v. City of New York, 09 CV 801 (RJD), 2011 U.S.

Dist. LEXIS 110954, at *13 (E.D.N.Y. Sept. 28, 2011) (citation omitted).

Ample evidence supports the probable cause determination to justify plaintiff's arrest in this matter.  The victim's consistent allegations against John Tabor, given with great specificity, provided the defendants with probable cause.  First, the victim spoke to Detective Asman at the 113th Precinct and stated that her mother's ex-boyfriend, John Tabor, told her to take off her pants, and when she refused, he took them off, choked her while holding her down and had intercourse with her, penis to vagina.  See Defendants' 56.1 St. ¶ 12.  The victim also provided the police with a sworn statement detailing the rape with specificity:

> I was in my room laying down watching T.V. and John was also in my room on the computer.  Then he walked out for about two minutes, came back and told me to take off my shorts and I refused so then he began to get rough and he started to take my shorts off. As he was taking my shorts off he began to choke me and say 'yell, go ahead and scream for help.' As he was saying thoes (sic) things still with his hand around my neck he forced his private on me.  I began to cry out but then he said 'cry for help' so I stopped crying.  After he was done he went into the bathroom and got a washrag and cleaned me off.  Then I started crying again.  And as he was walking out of my room he looked at me and said -- 'stop crying' 'don't cry you asked for it.

See Defendants' 56.1 St. ¶ 13.

That same day, the victim's complaint was forwarded to Detective Ropenus at the Queens Special Victim's Office and Detective Ropenus interviewed the victim.  Id. at ¶¶ 15-20. The victim informed Detective Ropenus that the person she called her stepfather had been living with her and the day prior to him leaving the house she was home alone with him.  Id. at ¶ 22. She was fifteen years old at that time.  See Defendants' 56.1 St. ¶ 99.  The victim was not sure of the date of the rape but was sure that it was the last day the subject was home before he was arrested in Connecticut.  Id. at ¶ 23.  The victim stated to Detective Ropenus that she was lying on her bed when her mother was at work, then plaintiff came into the room, forcibly removed her pants, began choking her, and forcibly penetrated her vagina with his penis and ejaculated on her

stomach. Id. at ¶¶ 26, 27.  The victim told Detective Ropenus that the plaintiff got a wash cloth, cleaned her and she began to cry.  Id. at ¶ 28.  The victim went on to say that while leaving plaintiff stated "why are you crying, you asked for it." Id. at ¶ 29.

In light of the complaining victim's particularized account of what happened in this case, it was entirely reasonable for the police officers to rely upon her version of events in determining that probable cause existed for plaintiff's arrest.  See Daniels v. City of New York, 03 Civ. 809 (GEL), 2003 U.S. Dist. LEXIS 19765 (S.D.N.Y. Nov. 5, 2003) ("Information furnished by a single complainant can establish probable cause when information comes from a victim who provides specific details of a crime.").  Additionally, the victim identified the plaintiff as the perpetrator.  The identification and description established probable cause.  See Gaston v. City of New York, 11 Civ. 4750 (AJP), 2012 U.S. Dist. LEXIS 46243, at *17-21 (S.D.N.Y. Apr. 2, 2012) (description and detail of the rape, coupled with the identification of plaintiff provided probable cause);  Parisi v. Suffolk Cnty., No. 04-CV-2187, 2009 U.S. Dist. LEXIS 112388, at *21-22 (E.D.N.Y. Nov. 30, 2009) ("probable cause for arrest has often been found by courts where only oral statements and descriptions were provided by the alleged victim."); Jean v. City of New York, 2011 U.S. Dist. LEXIS 110954 at *13-15 (granting summary judgment for defendants because the victim's allegations of the rape alone were enough to give rise to probable cause); Smith v. City of New York, 388 F. Supp. 2d 179, 185 (S.D.N.Y. 2005) (detective "had probable cause to arrest [plaintiff] . . . based on [the victim's] in-person identification of [plaintiff] and her description of the alleged rape.").

In addition to the consistent and detailed allegations, there was other evidence supporting probable cause.  The victim's sworn statement provided to the detectives supports probable cause.  See Riccio v. State of New York, 08-CV-1588, 2012 U.S. Dist. LEXIS 70024,

at *11 (E.D.N.Y. May 10, 2012) (holding victim's complaint, incident report and signed sworn statement provided the arresting officers the requisite probable cause). Here, the victim did just that – made a complaint, signed an incident report and a sworn statement – all before even speaking with Detective Ropenus from the Queens Special Victim's Squad. See Defendants' 56.1 St. ¶¶ 11-16.

Furthermore, the circumstances of the victim's complaint added to the probable cause. The victim told the detectives that she never saw or spoke to plaintiff since the incident, id. at ¶ 24, evidence that the victim distanced herself from plaintiff after the rape. Detective Ropenus was informed that the victim outcried to her cousin, id. at ¶ 54, evidence that this was not an isolated complaint to the authorities, but a complaint first made to family members. Detective Ropenus was informed that plaintiff was incarcerated for approximately 2 ½ years between the date of the rape and the victim's outcry, and once plaintiff was released from prison, the victim moved out of the house and went to live with her aunt. Id. at ¶¶ 23, 25. The victim's behavior with her family and her need for the separation from plaintiff, someone she had been living with before the rape, provided more support for the victim's veracity and the existence of probable cause.

Although plaintiff's complaint alleges that the detectives failed to investigate the victim's complaint, "once a police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest. Baker v. McCollan, 443 U.S. 137, 145-46 (1979); Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001)) ("Nor does it matter that an investigation might have cast doubt upon the basis for the arrest."); See also Brodie v. Fuhrman, 07-CV-4212, 2010 U.S. Dist. LEXIS

30158, at *24 (E.D.N.Y. Mar. 29, 2010) (an officer is not required "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest."); Celestin v. City of New York, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008) (detective "was not required to investigate [plaintiff'] alibi or exhaustively search for other suspects before acting on the facts at hand" because "once the evidence establishes probable cause, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence").

On the other hand, detective Ropenus did further investigation to solidify his probable cause determination. He ran a search for plaintiff in E-justice, see Defendants' 56.1 St. ¶ 17, interviewed the victim's mother, id. at ¶ 32, contacted the Real Time Crime Unit with respect to plaintiff's prior arrest, id. at ¶ 57, and he ran searches for plaintiff in other databases. Id. at 59.

Detective Ropenus was also able to clarify areas of uncertainty. First, the victim stated that she was raped the day before plaintiff was arrested, when she and plaintiff were home alone. See Defendants' 56.1 St. ¶¶ 22, 23. The victim's mother believed she remembered that day and thought she was home. Id. at ¶¶ 34, 35. However, Detective Ropenus was able to reconcile the date issue because the victim's mother stated that she was doing shift work and that she was not sure about being there the day before. Id. at ¶¶ 36, 40. Also, Detective Ropenus wanted to know why the victim did not tell her mother what happened right away and also wanted to know why she waited almost four years to complain. Id. at ¶¶ 43-45. The victim responded by stating that she did not tell her mom at first and waited almost four years because she did not want to hurt her mother, who was plaintiff's girlfriend at the time. Id. at ¶¶ 46-48.

Due to his training, Detective Ropenus was aware that when a family member is the abuser and another family member loves the one doing the abusing, the victim wants to continue to receive the love and support from the non-abusing family member. Id. at ¶¶ 49.

Most importantly, Detective Ropenus, who has conducted hundreds of victim interviews, found the victim here credible. See Defendants' 56.1 St. ¶¶ 21, 53. He found her credible because she described the incident using tactile responses – when she described what happened, she was describing how her body responded to being choked, about how her body responded to being penetrated. Id. at ¶ 54. Physical and emotional descriptions of the actual event that led him to believe that this is something that actually happened, as opposed to something that was fabricated. Id. He believed he had probable cause because the victim gave a particularized account of what happened and her description of what happened was wholly credible. Id. at ¶ 72. Defendant Ropenus' experience in conducting interviews of children who had been victimized, their delayed outcry and tactile responses, led him to believe that A.H. was the victim of a crime. Id.

Because the complaining victim recounted what happened to her to two detectives, and two Assistant District Attorneys, described the events with specificity, identified plaintiff as the person who raped her, and provided a sworn statement of the rape, there was probable cause for plaintiff's arrest. Accordingly, any false arrest claim against the officer defendants should be dismissed.

**POINT II**

**PLAINTIFF FAILS TO ESTABLISH A CLAIM
FOR MALICIOUS PROSECUTION**

To state a malicious prosecution claim, a plaintiff must show each of the following elements: (1) the defendant initiated a criminal proceeding; (2) the proceeding was

10

terminated in the plaintiff's favor; [2] (3) there was no probable cause for the criminal charge; and

(4) the defendant acted maliciously.  Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004);

Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  For a malicious

prosecution claim to rise to a constitutional level under § 1983, there must also be a post-

arraignment seizure.  Jocks v. Tavernier, 316 F.3d at 136.  New York law "places a heavy burden

on malicious prosecution plaintiffs . . . ." Rothstein, 373 F.3d at 282.

**A.      The Individually Named Defendants Did Not Commence Plaintiff's Prosecution**

With regard to the first element, according to New York common law, "the mere

reporting of a crime to [or by] the police and giving testimony are insufficient" to constitute the

initiation of a malicious prosecution claim.  Rohman, 215 F.3d at 217.  Plaintiff must establish

that defendant played an active role in the prosecution, such as giving advice and encouragement

or importuning the authorities to act.  Id.  As the Supreme Court recently stated, "it is almost

always a prosecutor who is responsible for the decision to present a case to a grand jury…[and] it

would be anomalous to permit a police officer … to be sued for maliciously procuring an unjust

prosecution when it is the prosecutor … who is actually responsible for the decision to

prosecute." Rehberg v. Paulk, 132 S. Ct. 1497, 1508 (2012), citing Albright v. Oliver, 510 U.S.

266, 279 (1994) (Ginsburg, J., concurring) (the prosecutor is the "principal player in carrying out

a prosecution").

In order to state a claim against the defendant officers, plaintiff must show that

defendants manufactured evidence that influenced the decision to prosecute, actively encouraged

a baseless prosecution, or provided information to prosecutors that was maliciously false.  White

v. Frank, 855 F.2d 956, 962 (2d Cir. 1988). Plaintiff does not have a good faith basis to allege

---

[2] Defendants concede that plaintiff's criminal proceeding was terminated favorably.  Plaintiff
was found not guilty of the charges brought against him.  See Defendants' 56.1 St. ¶ 104.

that defendants manufactured evidence that influenced the decision to prosecute, actively encouraged a baseless prosecution, or provided information to prosecutors that was maliciously false because it was the complaining victim herself who informed the Queens County District Attorney's Office that plaintiff raped her.  See Defendants' 56.1 St. ¶¶ 75, 85.  It was the complaining victim who told two Assistant District Attorneys that she was raped by her stepfather, and it happened on the last day that she saw him before he left town and was subsequently arrested in Connecticut for burglary and other related charges.  Id. at ¶ 87.  After the interview by the first ADA and based on the victim's statements, the criminal court complaint was filed.  Id. at ¶ 79.  As the complaining victim herself informed the Queens County District Attorney's Office about the rape, and the Assistant District Attorneys made the decision to prosecute plaintiff, plaintiff's malicious prosecution claim against the individually named defendant officers should be dismissed.

**B.**     **Probable Cause Existed for Plaintiff's Criminal Prosecution**

With regard to the third element, probable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause.  Batson-Kirk v. City of New York, 07-CV-1950 (KAM)(JMA), 2009 U.S. Dist. LEXIS 44841, at *24 (E.D.N.Y. May 28, 2009) (citation omitted); Obilo v. City University of the City of New York, 2003 U.S. Dist. LEXIS 2886, at *34 (E.D.N.Y. Feb. 28, 2003).  As argued in Point I, supra, probable cause existed for plaintiff's arrest.  Plaintiff cannot present any facts that came to light between the time plaintiff was arrested and his arraignment that vitiated that probable cause.  To the contrary, the complaining victim's own statements to the Queens County District Attorney's Office strengthened the probable cause to prosecute plaintiff.

Moreover, plaintiff was indicted by a grand jury on the charges of rape in the first and second degrees.  See Defendants' 56.1 St. ¶ 94.  Where, as here, there was an indictment by

a grand jury, there is a presumption of probable cause.  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  That presumption is only rebutted "by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  Id. (citation omitted).  "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the Grand Jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'"  Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (citation omitted).

The Supreme Court recently held that civil rights actions cannot be brought against witnesses, including police officers, for their testimony in front of a grand jury.  Rehberg v. Paulk, 132 S. Ct. 1497, 1506 (2012).  Plaintiff's indictment constitutes prima facie evidence of probable cause to prosecute, and the absolute immunity provided to defendants by Rehberg for testifying before a Grand Jury, prevents plaintiff from rebutting the presumption of probable cause by arguing that defendants made misrepresentations to the Grand Jury.  Accordingly, plaintiff's malicious prosecution claim fails and must be dismissed.

Even if plaintiff were able to overcome the absolute immunity of the defendants, plaintiff cannot erode the presumption of the Grand Jury indictment.  Plaintiff already moved to have the indictment dismissed and New York State Supreme Court Justice J. Griffin denied plaintiff's motion on the grounds that there was sufficient legal evidence to establish that the defendant committed the crimes charged in the indictment.  Id. at ¶ 95; Exhibit "Z" annexed to the Modafferi Declaration.  Accordingly, plaintiff's malicious prosecution claim fails.

**C.    Defendants Did Not Act with Malice**

Lastly, with regard to the fourth element, malice has been interpreted as commencing or continuing the prosecution for an improper motive, for a reason other than to see

13

that justice is served.  Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03 (1978)).  Malice may be inferred from a lack of probable cause.  Sulkowska v. City of New York, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001); Lowth, 82 F.3d at 573.  Plaintiff cannot satisfy the element of malice as there was probable cause to arrest and prosecute him, as previously discussed.  Therefore, any claim for malicious prosecution against the individually named defendants should be dismissed.

### POINT III

### DEFENDANTS ROPENUS, MCLAUGHLIN AND SINGLETARY ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The question of qualified immunity is independent of the merits of the underlying action and must be examined independent of the underlying claims.  Saucier v. Katz, 533 U.S. 194, 204 (2001).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).   The purpose of qualified immunity is to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992).

The qualified immunity standard is often referred to as "arguable probable cause" and is defined by the Second Circuit as "[existing] 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"  Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).  An arresting officer is entitled to qualified immunity "as a matter of law if the

undisputed facts and all permissible inferences favorable to the plaintiff show … that officers of reasonable competence could disagree on whether the probable cause test was met." McClellan v. Smith, 439 F.3d 137, 147-48 (2d Cir. 2006) (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

        As set forth in Point I, supra, probable cause existed for plaintiff's arrest. At the very least, the detectives had arguable probable cause to arrest plaintiff. Thus, in light of well established law "providing that probable cause to arrest may be based upon information provided by [the] crime victim …" it is clear that a reasonable officer in the same position as the individual defendants would have reasonably believed that the decision to arrest plaintiff and notify the District Attorney's Office was lawful. Similarly, with respect to plaintiff's malicious prosecution claim, at the time the defendants involvement in the case ceased, they still had a reasonable basis to believe that probable cause existed.

        For the same reasons discussed above, there can be no doubt that, at a minimum, officers of reasonable competence could disagree on whether there was probable cause to arrest plaintiff on the allegations of the victim alone. See Granito v. Tiska, 120 Fed. Appx. 847, 849 (2d Cir. 2005) (police officer had arguable probable cause to arrest alleged trespasser by relying on statement of property owner); Parisi v. Suffolk Cnty., No. 04-CV-2187, 2009 U.S. Dist. LEXIS 112388, at *29-30 (E.D.N.Y. Nov. 30, 2009) (officers of reasonable competence could disagree on whether there was probable cause to arrest plaintiff on the simple accusation of the claimed victim alone, much less when supported by corroborating evidence); Donovan v. Briggs, 250 F. Supp. 2d 242, 256 (W.D.N.Y. 2003) (putative rape victim's statement, demeanor, and corroborating physical evidence sufficient to confer qualified immunity on defendant police officers).

15

Therefore, for the reasons set forth above, defendants Ropenus, McLaughlin and Singletary are entitled to qualified immunity on plaintiff's false arrest and malicious prosecution claims.

### POINT IV

**PLAINTIFF'S CLAIM AGAINST THE CITY OF NEW YORK FAILS AS PLAINTIFF CANNOT ESTABLISH AN UNDERLYING CONSTITUTIONAL VIOLATION**

Plaintiff's municipal liability claim fails as a matter of law.  As set forth supra, plaintiff's constitutional rights were not violated by the individual defendants.  As such, plaintiff has suffered no constitutional injury for which defendant City of New York may be liable.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be Monell liability); Martinez v. City of New York, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. July 27, 2009); Vassallo v. Lando, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008) (holding that "no Monell claim can lie" where a court finds no constitutional violation).   Accordingly, plaintiff's claim against defendant City of New York must be dismissed.

### POINT V

**PLAINTIFF'S CONSTITUTIONAL TORT AND LOSS OF FAMILIAL RELATIONSHIP CLAIMS FAIL AS A MATTER OF LAW**

Plaintiff's state law claims of constitutional tort and loss of familial relationship fail because plaintiff failed to comply with General Municipal Law §§ 50-e and 50-i.  New York General Municipal Law § 50-e requires that a plaintiff asserting state law tort claims against a

municipal entity or its employees acting in the scope of employment must file a notice of claim within ninety days after the incident giving rise to the claim. N.Y. Gen. Mun. L. § 50-e (Consol. 2001). New York General Municipal Law § 50-i requires that the notice of claim be served on the City of New York and "commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1) (Consol. 2001).

      In federal court, state notice of claim statutes apply to state law claims. <u>Parise v. New York City Dep't of Sanitation,</u> 306 F. App'x 695, 697 (2d Cir. 2009) (citing <u>Felder v. Casey,</u> 487 U.S. 131, 151 (1988)). The notice of claim requirements are strictly construed, and a plaintiff's "failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims." <u>Warner v. Village of Goshen Police Dep't.,</u> 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003); <u>Hyde v. Caputo,</u> 98-CV- 6772 (FB)(ASC), 2001 U.S. Dist. LEXIS 6253, at *14 (May 11, 2001) (quoting <u>Davidson v. Bronx Mun. Hosp.,</u> 64 N.Y.2d 59, 62, 484 N.Y.S.2d 533 (1984)); <u>Silberstein v. County of Westchester,</u> 92 A.D. 867 (N.Y. App. Div. 2d Dept 1983), <u>aff'd,</u> 62 N.Y.2d 675 (1984). Specifically, failure to comply with these requirements requires a dismissal for failure to state a cause of action. <u>Brown v. Metropolitan Trans. Auth.,</u> 717 F. Supp. 257, 259 (S.D.N.Y. 1989).

      Plaintiff did not file a notice of claim. <u>See</u> Defendants' 56.1 St. ¶ 4. Plaintiff also failed to file this lawsuit within one year and ninety days of the date of his arrest, March 29, 2009. Plaintiff's lawsuit was filed on January 13, 2011, <u>see id.</u> at ¶ 1, almost two years after the underlying accrual date. Accordingly, plaintiff's constitutional tort and loss of familial relationship claims must be dismissed as a result of plaintiff's failure to file a notice of claim and timely file this lawsuit, pursuant to General Municipal Law §§ 50-e and 50-i.

Plaintiff's claims also fail on the merits. "The recognition of the [plaintiff's] state constitutional claims was neither necessary nor appropriate to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed … claims for [false arrest and malicious prosecution]." Lyles v. State of New York, 2 A.D.3d 694, 695-6 (N.Y. App. Div. 2d Dep't 2003) (citations omitted). Accordingly, because plaintiff's claims are appropriately addressed via his false arrest and malicious prosecution claims, plaintiff's constitutional tort claim must be dismissed.

To the extent plaintiff's loss of familial relationship claim is a due process claim, that also fails. As an initial matter, common sense dictates that any "familial relationship" was foreclosed by the victim's assertion that plaintiff had raped her. That plaintiff was arrested, practically speaking, head little or no impact on any familial relationship. That said, the Second Circuit has recognized family members' general right to remain together without state interference under notions of substantive due process. Tenenbaum v. Williams, 193 F.3d 581, 600-01 (2d Cir. 1999). The Supreme Court, however, has cautioned that substantive due process analysis is not proper "where a particular amendment 'provides an explicit textual source of constitutional protection...'". Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Specifically, the Court has noted that, "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" Id. Plaintiff has brought claims for false arrest and malicious prosecution under the Fourth Amendment. Accordingly, any due process claim is improper in light of plaintiff's ability to seek protection under the Fourth Amendment.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant them summary judgment and dismiss the complaint in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated:       New York, New York
             September 4, 2012

                          MICHAEL CARDOZO
                          Corporation Counsel for the City of New York
                          Attorney for Defendants City of New York,
                          Detectives James Ropenus, Danielle McLaughlin
                          and Joseph Singletary
                          100 Church Street
                          New York, New York 10007

                          By:    _____/s/_____
                                 MATTHEW J. MODAFFERI

**DECLARATION OF SERVICE**

Matthew J. Modafferi declares, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct: On September 4, 2012, I served the annexed **DEFENDANTS CITY OF NEW YORK, AND DETECTIVES ROPENUS, MCLAUGHLIN AND SINGLETARY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** upon plaintiff's attorney, Duncan Peterson, Esq., by depositing a copy of same, enclosed in a first class, postpaid properly addressed wrapper in a post office/official depository under the exclusive care and custody of the United States Postal Service, within the State of New York, directed to plaintiff's attorney:

> Duncan Peterson, Esq.
> Peterson Delle Cave, LLP
> *Attorneys for plaintiff*
> 233 Broadway, Suite 1800
> New York, New York 10279

being the address designated by plaintiff for that purpose.

Dated: New York, New York
      September 4, 2012

/s/
_____
MATTHEW J. MODAFFERI
ASSISTANT CORPORATION COUNSEL

11-CV-195 (FB)(CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN TABOR,

Plaintiff,

-against-

NEW YORK CITY, DETECTIVE JAMES ROPENUS,
DETECTIVE MCLAUGHLIN, POLICE OFFICER
SINGLETARY, ASSISTANT DISTRICT ATTORNEY
KEISHA ESPINAL, ASSISTANT DISTRICT
ATTORNEY LAUREN PARSONS, ASSISTANT
DISTRICT ATTORNEY KENNETH APPLEBAUM,
ASSISTANT DISTRICT ATTORNEY MARJORIE
FISHER, DISTRICT ATTORNEY RICHARD
BROWN, AND POLICE COMMISSIONER
RAYMOND KELLY, IN THEIR INDIVIDUAL AND
PROFESSIONAL CAPACITIES,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT**

### *MICHAEL A. CARDOZO*

*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Detectives Ropenus, McLaughlin and*
*Singletary*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Matthew Modafferi*
*Tel: (212) 788-1652*
*Matter #. 2011-001813*

*Due and timely service is hereby admitted.*

*New York, N.Y. ................................................, 2012.*

*..............................................................., Esq.*

*Attorney for ................................................................*